Tommy SWATE, Appellant,

v.

Judy SWATE, Appellee.

No. 10–01–020–CV.

Court of Appeals of Texas, Waco.

March 6, 2002.

Tommy Swate, San Antonio, pro se.

Reba A. Eichelberger, Paul R. Koenig, Eichelberger & Koenig, P.L.L.C., Baytown, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY Justice.

A father's parental rights were terminated. In a bench trial the court determined the father had failed to support the child in accordance with the father's abilities and also found that termination was in the best interest of the child. We are called upon to decide whether the evidence supported the termination and whether the order terminating the father's parental rights also terminated the father's legal duty to pay child support arrearage. We hold that the trial court's findings are based upon clear and convincing evidence and accordingly we affirm the judgment of termination. We also hold that termination of parental rights does not terminate liability for child support due as of the date of termination.

## BACKGROUND FACTS

Judy Swate Crook (Crook) and Tommy Swate (Swate) were divorced. Crook was appointed as the sole managing conservator of their child, A.N.S. Swate was ordered to pay child support. However, from August 1, 1999 through August 1, 2000, and during prior periods of nonpayment which had previously been reduced to judgment, no child support was paid.

Crook petitioned the court to terminate Swate's parental rights, vacate a Rule 11 Agreement, confirm child support arrearage, and find Swate in contempt. Swate cross-petitioned for modification of possession and contempt.

The trial court terminated Swate's parental rights, vacated the Rule 11 Agreement, and ordered payment of child support through the date of termination, but did not find Swate or Crook in contempt. Swate appealed.

## ISSUES ON APPEAL

Swate challenged the termination of his parental rights claiming that there was insufficient factual evidence to support the finding that termination was in the best interest of the child.[1] We will discuss the burden of proof at trial and our standard of review and then apply the standard to the evidence presented at trial.

Additionally, Swate argues that the trial court erred by holding that Swate had a legal duty to pay child support arrearage when Swate's parental rights were terminated.

## THE TWO PRONG TEST FOR TERMINATION OF PARENTAL RIGHTS

 The natural right existing between a parent and child is of constitutional dimension. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). The right to raise one's child has been characterized by the United States Supreme Court as essential, as a basic civil right, and as a right far more precious than property rights. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972). A termination decree is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers with respect ·to each other except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Termination is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Texas Dept. of Protective and Regulatory Services*, 962 S.W.2d 253, 256 (Tex.App.-Waco 1998, no

---

1. Swate's issue does not specify whether he is challenging the legal or factual sufficiency. In reviewing the argument and authorities under the issue, it appears he is challenging the factual sufficiency.

pet.). Swate does not challenge any aspect of these proceedings on constitutional bases. His complaint is that there is insufficient evidence of one of the elements required for termination under the applicable statute.

■ In proceedings to terminate the parent-child relationship brought under Section 161.001 of the Family Code, the petitioner must establish two elements. First, petitioner must prove one or more acts or omissions enumerated under the first subsection of the statute. Second, petitioner must prove that termination of the parent-child relationship is in the best interest of the child. TEX. FAM.CODE ANN. § 161.001(1), (2) (Vernon 1995 & Pamp. 2002); *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984). The fact finder must find both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex.1976); *Wiley v. Spratlan,* 543 S.W.2d 349, 351 (Tex.1976).

### BURDEN OF PROOF: CLEAR AND CONVINCING EVIDENCE

■ Termination of parental rights requires the petitioner to justify termination by clear and convincing evidence of each element. *In re G.M.,* 596 S.W.2d 846, 847 (Tex.1980). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Spangler v. Texas Dept. of Protective and Regulatory Services,* 962 S.W.2d 253, 256 (Tex.App.-Waco 1998, no pet.).

### FACTUAL SUFFICIENCY: STANDARD OF REVIEW ON APPEAL

■ When the trier of fact is required to make a finding by clear and convincing evidence, the court of appeals will only sustain an issue alleging factually insufficient evidence if the trier of fact could not reasonably find the existence of the fact to be established by clear and convincing evidence. *In the Interest of J.M.T.,* 39 S.W.3d 234, 238 (Tex.App.-Waco 1999, no pet.); *Spangler v. Texas Dept. of Protective and Regulatory Services,* 962 S.W.2d 253, 257 (Tex.App.-Waco 1998, no pet.). Thus, in a case where the burden of proof at trial is clear and convincing, an issue complaining that the evidence is factually insufficient will be sustained only when: (1) the evidence is factually insufficient to support a finding by clear and convincing evidence; or (2) a finding is so contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. *In the Interest of J.M.T.,* 39 S.W.3d at 238; *Spangler,* 962 S.W.2d at 257.

### APPLICATION OF THE TWO PRONG TERMINATION TEST

Termination of parental rights involves an application of a two prong test. There must be a predicate act which constitutes a violation of one of the provisions listed in the Family Code. Additionally, it must be in the best interest of the child that the parent-child relationship be terminated. *In the Interest of J.M.T.,* 39 S.W.3d at 238.

#### ACTS OR OMISSIONS UNDER THE FAMILY CODE

In order to terminate Swate's parental rights, Crook was required to prove at least one of the acts or omissions enumerated in the Family Code. TEX. FAM.CODE ANN. § 161.001(1) (Vernon 1995 & Pamp. 2002). One of the acts upon which termination can be based is a showing of failure to support the child in accordance with one's ability for a period of one year ending within six months of the date of the

filing of the petition. TEX. FAM.CODE ANN. § 161.001(1)(F) (Vernon 1995 & Pamp. 2002). Swate has not challenged the sufficiency of the evidence to support the fact finder's determination on this element.

### BEST INTEREST OF THE CHILD

■ Swate argues that there is insufficient evidence to support the finding by the trial court that termination of the parent-child relationship was in the best interest of A.N.S. There is a strong presumption that the best interest of children will be served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex.1976); *In the Interest of J.M.T.*, 39 S.W.3d 234, 240 (Tex.App.-Waco 1999 no pet.). Thus, the burden of proof upon the issue of best interest of the child is upon the one seeking to deprive the natural parent of their parental rights and, as previously discussed, has the higher burden that the finding must be established by clear and convincing evidence. *Herrera v. Herrera*, 409 S.W.2d 395, 396 (Tex.1966). The findings of fact made by the trial court include only the statement; "[t]he court also finds by clear and convincing evidence that termination of the parent-child relationship between Tommy Swate and the child the subject of this suit is in the best interest of this child." This conclusion provides us with no guidance as to the considerations or evidence relied upon by the court in making the finding of the best interest of A.N.S.

The Texas Supreme Court has recognized several factors which may be considered in determining when termination is in a child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976). These include:

1. The desires of the child;
2. The emotional and physical needs of the child now and in the future;
3. The emotional and physical danger to the child now and in the future;
4. The parental abilities of the individuals seeking custody;
5. The programs available to assist these individuals to promote the best interest of the child;
6. The plans for the child by these individuals or by the agency seeking custody;
7. The stability of the home or proposed placement;
8. The acts/omissions of the parent which may indicate that the existing parent-child relationship is not proper; and
9. Any excuse for the acts/omissions of the parent.

*Id.*

■ This listing is by no means exhaustive, but does include the most important considerations. No single consideration is controlling. However, the analysis of one factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child. We note that the *Holley* test focuses on the best interest of the child, not the best interest of the parent. *In the Interest of J.M.T.*, 39 S.W.3d 234, 240 (Tex.App.-Waco 1999, no pet.).

### REVIEW OF THE EVIDENCE

■ Because Swate challenges the factual sufficiency of the evidence on the determination of the best interest of the child, we will review the evidence in relation to each of the *Holley* factors.

**1. The desires of the child.**

Evidence was uncontroverted that A.N.S., age 12, would be relieved not to have contact with Swate and that she would like to be adopted by her stepfather.

**2. The emotional and physical needs of the child now and in the future.**

### Kevin T. Jones, Ph.D.

Dr. Jones testified to the emotional state of A.N.S. in regard to Swate. Dr. Jones stated that A.N.S. had nightmares and anxiety attacks about having contact with Swate, and that A.N.S. has feelings of rejection, abandonment, and anger toward Swate. A.N.S. threatened to kill herself if she had to have contact with Swate. Swate visited A.N.S. only one or two times in the last year and A.N.S. believed Swate was using her as a pawn against her mother.

Dr. Jones also testified that A.N.S. stopped having anxiety attacks and was functioning well when, in her mind, the termination was settled, signed, and done. A.N.S. views Mr. Crook as her father and has a successful relationship with him and his family. A.N.S. considers Mr. Crook's children her brothers and sisters. Dr. Jones testified he believed termination of Mr. Swate's parental rights was in the best interest of A.N.S.

### Crook

Crook testified that A.N.S. is most happy when Swate is not in her life. She also stated that Swate initiated discussions concerning termination of his parental rights, and that she never prevented Swate from exercising visitation. Crook testified she believed it was in the best interest of A.N.S. to terminate Swate's parental rights.

### 3. The emotional and physical danger to the child now and in the future.

Evidence was presented at trial of both emotional and physical danger to A.N.S.

### Kevin T. Jones, Ph.D.

Dr. Jones testified that A.N.S. had nightmares and anxiety attacks regarding contact with her father. A.N.S. was angry and felt rejected and abandoned by Swate. In one incident at a hotel, Swate had an argument and left A.N.S. with members of his wife's family whom A.N.S. did not know. A.N.S. felt Swate was intimidating and was afraid of him. In her mind, visits with Swate were always unpleasant experiences. At no time did Swate attempt to contact Dr. Jones to discuss or review the emotional health of A.N.S.

### Crook

Crook testified that Swate exhibited a pattern of indifference and a lack of concern for A.N.S. Swate's absence from the life of A.N.S. showed a callous disregard for her health, emotional well-being, and emotional needs. Crook testified that Swate said "he would get back at me by hurting her" and "[a] father can do a lot of emotional damage and I will do it to get you, you bitch."

Swate and his wife, Rita Swate, argue to the point that Rita removes her children from his presence. Rita Swate yells at her children and hits them. When Swate left A.N.S. at the hotel with his wife's family, Swate's mother-in-law called Crook and asked Crook to pick up A.N.S. because she thought Swate was acting "in a crazy way," and she would not let A.N.S. go with Swate.

Crook also testified that there are police reports involving Swate going back to the early 1990's. In addition, Crook testified to a time when Swate picked up A.N.S. and threw her. Crook stated that Swate has a pattern of attacking others both verbally and physically.

### 4. The parental abilities of the individuals seeking custody.

No witness testified directly to the parental abilities of Swate, Crook, or Mr. Crook, the stepfather who may seek to adopt A.N.S. in the event of termination. Thus, there is little testimony as to the parental ability of the individuals involved. However, Dr. Reed, Swate's expert witness, testified that a parent who never

sent his child any cards, letters, or notes, never called her on the phone, and never attended any school functions, is "a parent, but not a parent exercising parental responsibility."

**5. The programs available to assist these individuals to promote the best interest of the child.**

While there is very little testimony as to programs which are available to promote the child's best interest, the record reflects that A.N.S. has a successful relationship with her stepfather and views his children as her brothers and sisters.

**6. The plans for the child by these individuals or by the agency seeking custody.**

Though there was no joint adoption proceeding before the trial court and the stepfather did not testify, there is evidence that the stepfather would like to adopt the child. We have held that a desire for adoption by a stepparent is an additional consideration that can factor into a best interest of the child determination. *In the Interest of J.M.T.*, 39 S.W.3d 234, 243 (Tex.App.-Waco 1999, no pet.); *Williams v. Gaul*, 687 S.W.2d 85, 88 (Tex.App.-Waco 1985, no writ) (citing *Dressler v. Aldridge*, 567 S.W.2d 48, 50 (Tex.Civ.App.-El Paso 1978, no writ)). However, the evidence of the stepfather's desire to adopt the child is weak, and thus this factor bears little weight in our analysis. We find no other evidence regarding specific plans for A.N.S. by any party or person.

**7. The stability of the home or proposed placement.**

The evidence showed a certain instability in Swate's work history and his family relationships. Swate testified he was a medical doctor, but was precluded from practicing medicine, and that he was "literally blackballed by the medical profession." Swate testified he had filed bankruptcy

several times, lost his job, and had judgments against him for more than one million dollars.

Swate argues to such an extent that his current wife, Rita Swate, removes her children from his presence. Rita Swate also yells at and hits her children.

There was little or no evidence admitted concerning the stability of Crook's home.

**8. The acts/omissions of the parent which may indicate that the existing parent-child relationship is not proper.**

There was little or no evidence presented to suggest the parent-child relationship between Crook and A.N.S. was not proper. As summarized below, there was ample evidence that the relationship between Swate and A.N.S. was not a proper parent-child relationship.

**Kevin T. Jones, Ph.D.**

Dr. Jones testified that Swate had only one or two visits with A.N.S. last year. During the visits Swate spent most of the time with his friend and others. During an argument Swate left A.N.S. at a hotel with his wife's family members whom A.N.S. did not know. Although Swate knew A.N.S. was attending counseling sessions, Swate did not try to contact Dr. Jones to schedule any counseling sessions to work on Swate's relationship with A.N.S. Swate neglected to send A.N.S. birthday cards. Swate failed to demonstrate care for A.N.S. by exercising his visitation.

**Crook**

Crook testified that Swate made no requests for possession during the last year nor paid any child support. Crook also testified to an incident when Swate picked up A.N.S. and threw her. Swate initiated discussions concerning termination of parental rights. Swate neglected to maintain health insurance coverage of A.N.S. as or-

dered by the court and paid no medical expenses between August 1, 1999 and August 1, 2000.

**Swate**

Swate testified that he did not exercise visitation per the decree, did not pay child support as ordered, attempted to have the child support amount reduced, and was sanctioned for filing a frivolous appeal after the trial court ruled against him. The record indicates that Swate did not attempt to borrow money in order to pay his child support. Swate's only attempt to establish a relationship with A.N.S. was through a limited number of phone calls. Swate testified that he never showed up for court ordered visitation times.

**9. Any excuse for the acts/omissions of the parent.**

The only excuse Swate gives for not exercising his visitation with A.N.S. was that he lives in San Antonio. Swate's excuse for not paying child-support during the last year was that he was induced into nonpayment by Crook and Crook's attorney. Swate produced no evidence other than his own statement of such inducement at trial. Swate gave no excuse for not paying child support prior to the time period of August 1, 1999 to August 1, 2000.

**Best Interest Of The Child—Factual Sufficiency Review**

We have conducted our analysis by a detailed review of the evidence on each of the *Holley* factors. We must limit our role to reviewing the trial court's determination by the applicable standard of review.

There was ample evidence presented that termination of Swate's parental rights was in the best interest of A.N.S. Swate presented no evidence that termination was not in the best interest of A.N.S. Accordingly, we hold that the finding that termination of the parent-child relationship is in the best interest of A.N.S. is not so

contrary to the weight of contradicting evidence that no trier of fact could reasonably find the evidence to be clear and convincing. Additionally, upon review of all the evidence, we hold that the finding is supported by clear and convincing evidence. We overrule Swate's factual sufficiency challenge on the best interest prong of the test and overrule issue one.

**ORDER TERMINATING PARENTAL RIGHTS DOES NOT ABSOLVE DEBT OF CHILD SUPPORT ARREARAGE**

Swate argues that section 161.206(b) of the Family Code, which states "[a]n order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides," absolves the parent whose rights were terminated from paying child support arrearage. TEX. FAM.CODE ANN. § 161.206(b) (Vernon 1995 & Pamp.2002). Swate tries to use the plain language doctrine of statutory construction to absolve himself of his debt to Crook.

It is true "[when] construing a statute, the courts must read words according to their ordinary meaning unless a contrary intention is apparent from the context." *Taylor v. Firemen's and Policemen's Civil Service Commission of the City of Lubbock*, 616 S.W.2d 187, 189 (Tex. 1981); *See, e.g., Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex.1969); *Railroad Commission of Texas v. Miller*, 434 S.W.2d 670 (Tex.1968). But it is also true that courts must determine the purpose of a statute from its language and not elsewhere. Courts are not responsible for omissions in legislation. "They are responsible for a true and fair interpretation ... which expresses only the will of the

makers of the law, not forced or strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain." *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985) (quoting *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920)).

"It is also a rule of statutory construction that one must look to the entire Act in determining the legislature's intent with respect to a specific provision." *Taylor v. Firemen's and Policemen's Civil Service Commission of the City of Lubbock,* 616 S.W.2d 187, 190 (Tex.1981); *State v. Terrell,* 588 S.W.2d 784, 786 (Tex. 1979). Swate fails to discuss in his brief section 151.001(c) (previously section 151.003(c)) of the Texas Family Code that states "[a] parent who fails to discharge the duty of support is liable to a person who provides necessaries to those to whom support is owed." Tex. Fam.Code Ann. § 151.001(c) (Vernon Supp.2002), previously Tex. Fam.Code Ann. § 151.003(c) (Vernon 1995) renumbered by Acts 2001, 77th Leg., ch. 821 § 2.13, eff. June 14, 2001. We note that the child support judgment is an obligation to a third party for the benefit of the child, not directly to the child. Termination of parental rights also terminates parental duties including the duty to provide support in the future.

Section 151.001(c) of the Texas Family Code indicates a parent who bears the financial burden of supporting a minor child is entitled to payment from the parent who has neglected his or her duty of support. *In the Interest of B.I.V.,* 923 S.W.2d 573, 575, (Tex.1996); *Creavin v. Moloney,* 773 S.W.2d 698, 703 (Tex.App.-Corpus Christi 1989, writ denied); *Maxwell v. Maxwell,* 204 S.W.2d 32, 37 (Tex. Civ.App.-Amarillo 1947, writ ref'd n.r.e.).

Looking at the entire Act, and applying a plain language reading of section 161.206(b) of the Texas Family Code,

an order terminating the parent-child relationship does not absolve the debt for child support arrearage. *Walker v. Sheaves,* 533 S.W.2d 87, 91 (Tex.Civ.App.-San Antonio 1976, writ ref'd n.r.e.). Reading section 161.206(b) of the Texas Family Code to absolve child support arrearage would eliminate the purpose of section 151.001(c) (previously section 151.003(c)) of the Texas Family Code. The delinquent parent could refuse to pay child support until termination of parental rights was ultimately ordered, thus defeating the statute and the court's original order to pay child support.

Swate had a duty to support A.N.S. until the parent-child relationship was terminated by the court's order. Termination does not foreclose the possibility that a parent may seek to recover the amount of past due child support. The termination order does not bar a parent who has borne the financial burden of supporting a minor child from recovering accrued obligations. *In the Interest of W.J.S., a Minor,* 35 S.W.3d 274, 277–78 (Tex.App.-Houston 2000). We overrule Swate's second issue challenging his legal duty to pay the child support arrearage.

## CONCLUSION

Having overruled all the issues brought for our review, the judgment of the trial court is affirmed.