COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-186-CV
 
 
IN 
THE INTEREST OF
 
 
S.L.S., 
A CHILD
 
 
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Stephen S. appeals the trial court’s judgment terminating his parental rights 
to his child, S.L.S. In his sole point, appellant argues that the evidence is 
factually insufficient to support the trial court’s judgment that termination 
of his parental rights is in the best interest of S.L.S. We affirm.
Background
        S.L.S. 
was born on May 22, 2003. She is the child of appellant and Chanda L. Chanda is 
mentally retarded, and appellant has been diagnosed with paranoid schizophrenia. 
The day after S.L.S. was born, the State filed a petition to terminate 
appellant’s and Chanda’s parental rights after it received a special request 
from the probate court that had previously established Chanda’s mother, Helen, 
as Chanda’s legal guardian.
        Chanda 
waived her right to a jury, and all questions of fact and law regarding 
termination of her parental rights were submitted to the trial court. Appellant, 
however, did not waive his right to a jury. A jury found that appellant has a 
mental or emotional illness or a mental deficiency that renders him unable to 
provide for the physical, emotional, and mental needs of S.L.S; that the illness 
or deficiency, in all reasonable probability, will continue to render appellant 
unable to provide for S.L.S.’s needs until her eighteenth birthday; that the 
State has been the temporary managing conservator of S.L.S. for the six months 
prior to the termination hearing; and that termination of the parent-child 
relationship is in the best interest of S.L.S. The trial court entered a decree 
terminating appellant’s and Chanda’s parental rights, and only appellant 
appealed.
Best Interest
        Appellant 
challenges only the factual sufficiency of the evidence to support the jury’s 
finding that termination of the parent-child relationship is in the best 
interest of S.L.S. A parent’s rights to “the companionship, care, custody, 
and management” of his or her children are constitutional interests “far 
more precious than any property right.” Santosky v. Kramer, 455 U.S. 
745, 758-59, 102 S. Ct. 1388, 1397 (1982). “While parental rights are of 
constitutional magnitude, they are not absolute. Just as it is imperative for 
courts to recognize the constitutional underpinnings of the parent-child 
relationship, it is also essential that emotional and physical interests of the 
child not be sacrificed merely to preserve that right.” In re C.H., 89 
S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to 
limit parental rights but to end them permanently—to divest the parent and 
child of all legal rights, privileges, duties, and powers normally existing 
between them, except for the child’s right to inherit. Tex. Fam. Code Ann. § 161.206(b) 
(Vernon Supp. 2004-05); Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). 
We strictly scrutinize termination proceedings and strictly construe involuntary 
termination statutes in favor of the parent. Holick, 685 S.W.2d at 20-21; 
In re D.T., 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) 
(op. on reh’g).
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the petitioner must establish one or more of the 
acts or omissions enumerated under subdivision (1) of the statute and must also 
prove that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001 (Vernon 
2002); Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Swate v. 
Swate, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). Both 
elements must be established; termination may not be based solely on the best 
interest of the child as determined by the trier of fact. Tex. Dep’t of 
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
        Termination 
of parental rights is a drastic remedy and is of such weight and gravity that 
due process requires the petitioner to justify termination by clear and 
convincing evidence. Tex. Fam. Code Ann. 
§§ 161.001, 161.206(a); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). 
This intermediate standard falls between the preponderance standard of ordinary 
civil proceedings and the reasonable doubt standard of criminal proceedings. G.M., 
596 S.W.2d at 847; D.T., 34 S.W.3d at 630. It is defined as the 
“measure or degree of proof that will produce in the mind of the trier of fact 
a firm belief or conviction as to the truth of the allegations sought to be 
established.” Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).
        The 
higher burden of proof in termination cases alters the appellate standard of 
factual sufficiency review. C.H., 89 S.W.3d at 25. “[A] finding that 
must be based on clear and convincing evidence cannot be viewed on appeal the 
same as one that may be sustained on a mere preponderance.” Id. In 
considering whether the evidence of termination rises to the level of being 
clear and convincing, we must determine “whether the evidence is such that a 
factfinder could reasonably form a firm belief or conviction” that the grounds 
for termination were proven. Id. Our inquiry here is whether, on the 
entire record, a factfinder could reasonably form a firm conviction or belief 
that the termination of the parent’s parental rights would be in the best 
interest of the child. Id. at 28.
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include
 
        (1)    the 
desires of the child;
  
        (2)    the 
emotional and physical needs of the child now and in the future;
 
        (3)    the 
emotional and physical danger to the child now and in the future;
 
        (4)    the 
parental abilities of the individuals seeking custody;
  
        (5)    the 
programs available to assist these individuals to promote the best interest of 
the child;
   
        (6)    the 
plans for the child by these individuals or by the agency seeking custody;
   
        (7)    the 
stability of the home or proposed placement;
 
        (8)    the 
acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
        (9)    any 
excuse for the acts or omissions of the parent.
 
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). These factors are not 
exhaustive; some listed factors may be inapplicable to some cases; other factors 
not on the list may also be considered when appropriate. C.H., 89 S.W.3d 
at 27. Furthermore, undisputed evidence of just one factor may be sufficient in 
a particular case to support a finding that termination is in the best interest 
of the children. Id. On the other hand, the presence of scant evidence 
relevant to each Holley factor will not support such a finding. Id.
Emotional and Physical Danger to S.L.S. Now and in the 
Future
        Dr. 
Karen Price, a psychiatrist with Mental Health Mental Retardation of Tarrant 
County (MHMR), testified that she has met with appellant on three different 
occasions. Appellant has been diagnosed with paranoid schizophrenia. Appellant 
was discharged from the Navy because he has a personality disorder. Dr. Price 
testified that appellant’s chart indicated that he had, at one time, ten 
different voices talking to him. Helen testified that appellant told her that he 
sees squares, triangles, and circles and that the shapes sometimes talk to him. 
At trial, appellant denied hearing voices and testified that he did not know if 
he had told Helen about shapes talking to him and that he “might have been 
bored.”
        Dr. 
Price testified that appellant has had suicidal and homicidal feelings, as well 
as feelings of paranoia, which included thinking that someone is out to get him. 
Appellant had not complied with his treatment plan, which consisted of a 
medication regimen. Appellant testified that there is no way that he has a 
mental illness. Appellant’s lack of compliance concerned Dr. Price because of 
the likelihood that his schizophrenic episodes will happen again. Dr. Price 
testified that appellant is a danger to himself or others and that she would 
have grave concerns about the safety of a small child placed in his care.
        Appellant 
has a history of violent behavior. Appellant was once hospitalized after he 
threatened to kill a nurse at MHMR. During a visit with Dr. Price, appellant 
told her that he had considered stuffing medicine down her throat. Appellant was 
arrested for assaulting Chanda. Appellant testified, “They arrested me because 
I left a big-ass handprint on her ass.” Appellant testified that on another 
occasion he pulled Chanda’s hair and “hit her fairly hard in the side of the 
head.” Appellant also testified that he once tried to lock Chanda in a closet. 
Chanda testified that appellant kicked her in the stomach when she was pregnant. 
Appellant denied kicking Chanda in the stomach but said that he had threatened 
to do so.
Parental Abilities of the Individuals Seeking Custody
        Helen 
wishes to have S.L.S. placed with her so that she can adopt S.L.S. She works as 
a school teacher and lives with her husband, James. They have been married for 
seventeen years. According to Helen, her husband shares her desire to take on 
responsibility for S.L.S. Helen testified that she has come to love S.L.S. very 
much and is committed to raising her to adulthood. Helen has raised two girls, 
both with mental disabilities, and has helped raise four more children. The 
child advocate, Barbara Gentile, testified that she thinks Helen will provide a 
nurturing environment for S.L.S. and will be an appropriate parent.
        Appellant 
does not wish to have custody of S.L.S. Rather, appellant testified that he 
wants Chanda to have custody of S.L.S. On appeal, appellant argues that he 
should have visitation rights. However, when asked at trial whether he plans to 
have contact with his child, appellant responded, “The State of Texas only 
requires that I support her financially,” and then said, “It’s none of 
your business.”
The Plans for the Child by these Individuals or by the 
Agency Seeking Custody
        Appellant 
testified that he wants S.L.S to stay a year or two ahead of all the other 
students in her school, to go to college early, and to become a naval pilot. He 
said that he would never harm S.L.S. because “[g]irls don’t usually respond 
to corporal punishment, anyway.” However, earlier in the trial, appellant 
testified that “when [S.L.S.] turns 12, and I start whipping her, she’s 
going to ask me why, and I’m going to tell her, because you’re going to know 
when you turn 16.”
  

The Acts or Omissions of the Parent which may Indicate that the Existing 
Parent-Child Relationship is not a Proper One

        Appellant 
has had little contact with S.L.S. Appellant’s visitation rights were 
terminated after an incident that occurred during a visit with S.L.S. at the 
Child Protective Services (CPS) office. One of the CPS workers present testified 
that Chanda asked appellant if he wanted to hold S.L.S. and that appellant said 
he did. Appellant sat S.L.S. on his knees and did not comfort her. When S.L.S. 
started crying, appellant quickly threw her diaper rag to the side, which 
prompted Chanda to reach for the baby. Appellant pushed Chanda away. He then 
covered S.L.S. with his body and refused to give her back to CPS workers. The 
CPS worker testified that afterwards, when appellant’s father asked him why he 
had done that, appellant said he had read in a book that you’re supposed to 
let a baby just cry.
Conclusion
        Appellant 
has a history of mental illness and violent behavior and has refused to comply 
with his treatment plan. Apellant’s testimony at trial indicates that he is 
currently suffering from mental illness. Appellant does not wish to have custody 
of S.L.S. and has not even made clear that he seeks to have any contact with 
her. Helen has expressed her desire to have custody of S.L.S. and to adopt her. 
Therefore, we conclude that the jury could reasonably form a firm conviction or 
belief that termination of appellant’s parental rights was in the best 
interest of S.L.S. We overrule appellant’s sole point and affirm the trial 
court’s judgment.
 
                                                          PER 
CURIAM
 
PANEL 
A:   LIVINGSTON, J.; CAYCE, C.J.; and MCCOY, J.
DELIVERED: 
February 3, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.