IN RE S.L.S.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-186-CV

IN THE INTEREST OF 

S.L.S., A CHILD 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Stephen S. appeals the trial court’s judgment terminating his parental rights to his child, S.L.S.  In his sole point, appellant argues that the evidence is factually insufficient to support the trial court’s judgment that termination of his parental rights is in the best interest of S.L.S.  We affirm.

Background

S.L.S. was born on May 22, 2003.  She is the child of appellant and Chanda L.  Chanda is mentally retarded, and appellant has been diagnosed with paranoid schizophrenia.  The day after S.L.S. was born, the State filed a petition to terminate appellant’s and Chanda’s parental rights after it received a special request from the probate court that had previously established Chanda’s mother, Helen, as Chanda’s legal guardian. 

Chanda waived her right to a jury, and all questions of fact and law regarding termination of her parental rights were submitted to the trial court.  Appellant, however, did not waive his right to a jury.  A jury found that appellant has a mental or emotional illness or a mental deficiency that renders him unable to provide for the physical, emotional, and mental needs of S.L.S; that the illness or deficiency, in all reasonable probability, will continue to render appellant unable to provide for S.L.S.’s needs until her eighteenth birthday; that the State has been the temporary managing conservator of S.L.S. for the six months prior to the termination hearing; and that termination of the parent-child relationship is in the best interest of S.L.S.  The trial court entered a decree terminating appellant’s and Chanda’s parental rights, and only appellant appealed.

Best Interest
 

   Appellant challenges only the factual sufficiency of the evidence to support the jury’s finding that termination of the parent-child relationship is in the best interest of S.L.S.  A parent’s rights to “the companionship, care, custody, and management” of his or her children are constitutional interests “far more precious than any property right.”  
Santosky v. Kramer
, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 1397 (1982).  
“While parental rights are of constitutional magnitude, they are not absolute.  Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.”  
In re C.H.
, 89 S.W.3d 17, 26 (Tex. 2002).
  
In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child’s right to inherit.  
Tex. Fam. Code Ann. 
§ 161.206(b) (Vernon Supp. 2004-05); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).  We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent.  
Holick
, 685 S.W.2d at 20-21;
 In re D.T.
, 34 S.W.3d 625, 630 (Tex. App.—Fort Worth 2000, pet. denied) (op. on reh’g).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one or more of the acts or omissions enumerated under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.  
Tex. Fam. Code Ann. 
§ 161.001 (Vernon 2002); 
Richardson v. Green
, 677 S.W.2d 497, 499 (Tex. 1984); 
Swate v. Swate
, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  Both elements must be established; termination may not be based solely on the best interest of the child as determined by the trier of fact.  
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  
Tex. Fam. Code Ann.
 §§ 161.001, 161.206(a); 
In re G.M.
, 596 S.W.2d 846, 847 (Tex. 1980).  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  
G.M.
, 596 S.W.2d at 847; 
D.T.
, 34 S.W.3d at 630.  It is defined as the “measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.”  
Tex. Fam. Code Ann. 
§ 101.007 (Vernon 2002).

The higher burden of proof in termination cases 
alters the appellate standard of factual sufficiency review.  
C.H.
, 89 S.W.3d at 25.  “[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance.”  
Id
.  In considering whether the evidence of termination rises to the level of being clear and convincing, we must determine “whether the evidence is such that a factfinder could reasonably form a firm belief or conviction” that the grounds for termination were proven.  
Id
.  Our inquiry here is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the termination of the parent’s parental rights would be in the best interest of the child.  
Id
. at 28.  

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include

(1) the desires of the child;

(2) the emotional and physical needs of the child now and in the future; 

(3) the emotional and physical danger to the child now and in the future; 

(4) the parental abilities of the individuals seeking custody; 

(5) the programs available to assist these individuals to promote the best interest of the child;

(6) the plans for the child by these individuals or by the agency seeking custody; 

(7) the stability of the home or proposed placement;

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and 

(9) any excuse for the acts or omissions of the parent. 

Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976).  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.  
C.H
., 89 S.W.3d at 27.  Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the children.  
Id.
  On the other hand, the presence of scant evidence relevant to each 
Holley
 factor will not support such a finding.  
Id.

Emotional and Physical Danger to S.L.S. Now and in the Future

Dr. Karen Price, a psychiatrist with Mental Health Mental Retardation of Tarrant County (MHMR), testified that she has met with appellant on three different occasions.  Appellant has been diagnosed with paranoid schizophrenia.  Appellant was discharged from the Navy because he has a personality disorder.  Dr. Price testified that appellant’s chart indicated that he had, at one time, ten different voices talking to him.  Helen testified that appellant told her that he sees squares, triangles, and circles and that the shapes sometimes talk to him.  At trial, appellant denied hearing voices and testified that he did not know if he had told Helen about shapes talking to him and that he “might have been bored.” 

Dr. Price testified that appellant has had suicidal and homicidal feelings, as well as feelings of paranoia, which included thinking that someone is out to get him.  Appellant had not complied with his treatment plan, which consisted of a medication regimen.  Appellant testified that there is no way that he has a mental illness.  Appellant’s lack of compliance concerned Dr. Price because of the likelihood that his schizophrenic episodes will happen again.  Dr. Price testified that appellant is a danger to himself or others and that she would have grave concerns about the safety of a small child placed in his care.   

Appellant has a history of violent behavior.  Appellant was once  hospitalized after he threatened to kill a nurse at MHMR.  During a visit with Dr. Price, appellant told her that he had considered stuffing medicine down her throat.  Appellant was arrested for assaulting Chanda.  Appellant testified, “They arrested me because I left a big-ass handprint on her ass.”  Appellant testified that on another occasion he pulled Chanda’s hair and “hit her fairly hard in the side of the head.”  Appellant also testified that he once tried to lock Chanda in a closet.  Chanda testified that appellant kicked her in the stomach when she was pregnant.  Appellant denied kicking Chanda in the stomach but said that he had threatened to do so. 

Parental Abilities of the Individuals Seeking Custody

Helen
 wishes to have S.L.S. placed with her so that she can adopt S.L.S.  She works as a school teacher and lives with her husband, James.  They have been married for seventeen years.  According to Helen, her husband shares her desire to take on responsibility for S.L.S.  Helen testified that she has come to love S.L.S. very much and is committed to raising her to adulthood.  Helen has raised two girls, both with mental disabilities, and has helped raise four more children.  The child advocate, Barbara Gentile, testified that she thinks Helen will provide a nurturing environment for S.L.S. and will be an appropriate parent. 

Appellant does not
 
wish to have custody of S.L.S.  Rather, appellant testified that he wants Chanda to have custody of S.L.S.  On appeal, appellant argues that he should have visitation rights.  However, when asked at trial whether he plans to have contact with his child, appellant responded, “The State of Texas only requires that I support her financially,” and then said, “It’s none of your business.” 
 

The Plans for the Child by these Individuals or by the Agency Seeking Custody

Appellant testified that he wants S.L.S to stay a year or two ahead of all the other students in her school, to go to college early, and to become a naval pilot.  He said that he would never harm S.L.S. because “[g]irls don’t usually respond to corporal punishment, anyway.”  However, earlier in the trial, appellant testified that “when [S.L.S.] turns 12, and I start whipping her, she’s going to ask me why, and I’m going to tell her, because you’re going to know when you turn 16.” 

The Acts or Omissions of the Parent which may Indicate that the Existing Parent-Child Relationship is not a Proper One

Appellant has had little contact with S.L.S.  Appellant’s visitation rights were terminated after an incident that occurred during a visit with S.L.S. at the Child Protective Services (CPS) office.  One of the CPS workers present testified that Chanda asked appellant if he wanted to hold S.L.S. and that appellant said he did.  Appellant sat S.L.S. on his knees and did not comfort her.  When S.L.S. started crying, appellant quickly threw her diaper rag to the side, which prompted Chanda to reach for the baby.  Appellant pushed Chanda away.  He then covered S.L.S. with his body and refused to give her back to CPS workers.  The CPS worker testified that afterwards, when appellant’s father asked him why he had done that, appellant said he had read in a book that you’re supposed to let a baby just cry.   

Conclusion 

Appellant has a history of mental illness and violent behavior and has refused to comply with his treatment plan.  Apellant’s testimony at trial indicates that he is currently suffering from mental illness.  Appellant does not wish to have custody of S.L.S. and has not even made clear that he seeks to have any contact with her.  Helen has expressed her desire to have custody of S.L.S. and to adopt her.  Therefore, we conclude that the jury could reasonably form a firm conviction or belief that termination of appellant’s parental rights was in the best interest of S.L.S.  We overrule appellant’s sole point and affirm the trial court’s judgment.  

PER CURIAM

PANEL A: LIVINGSTON, J.; CAYCE, C.J.; and MCCOY, J.

DELIVERED:  February 3, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.