NO. 07-10-00476-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 19, 2011

_____

IN THE INTEREST OF S.J.P.P., A CHILD

_____

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2010-551,141; HONORABLE JUDY C. PARKER, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Bill, appeals from the trial court's order terminating his parental rights to his child, S.J.P.P.[1]  He presents two issues.  We will overrule his issues and affirm the judgment of the trial court.

Background

Bill and Daniele were married and had a son, S.J.P.P, born in May 2003.  The parties divorced in January 2005. At that time, Bill was named possessory conservator, was not ordered to pay child support, and had visitation at any time mutually agreed by

_____

[1] In their appellate briefs, the parents of S.J.P.P. identify themselves by the names Bill and Daniele.  We also will use those names.  Tex. R. App. P. 9.8.

the parties. At the time of the divorce, both parties were incarcerated for forgery of the same check. Daniele was sentenced to one year and Bill to 15 years.

On April 13, 2010, Daniele filed a petition to terminate Bill's parental rights and to change the child's name. In that petition, Daniele alleged Bill's parental rights should be terminated under subsections (F), (H) and (Q) of Family Code § 161.001(1). Tex. Fam. Code Ann. § 161.001(1)(F), (H), (Q) (West 2009). A hearing was held on the petition on October 5, 2010. Bill's request for a bench warrant to attend the hearing was denied but he participated via telephone.

At the hearing, the court heard testimony that Daniele took S.J.P.P. to see Bill while he was in prison but the visits ended when the child was five months old. Since then, Bill has continually written to his son, making effort to stay in contact with him. He also took several educational and behavior modification classes while incarcerated, including a gang renouncement class, parenting classes, anger management classes, and four substance abuse classes. He also became a certified painter, estimator and appraiser and worked toward an associate's degree in business administration. He has a job prospect when he is released that will earn him $3000 per month. In April 2010, he was required to, and did take, a "Changes One" class. This class is a prerequisite for being released on parole and, according to Bill, may be taken only when release is expected within two years.

The court concluded the hearing without ruling and later issued a letter ruling, followed by an order, terminating Bill's parental rights under § 161.001(1)(Q). It is from that order Bill now appeals.

2

Analysis

By his two issues on appeal, Bill argues the evidence presented at the hearing was legally and factually insufficient to support termination of his parental rights under Family Code § 161.001(1)(Q) because he presented evidence showing he would be paroled before the expiration of that subsection's two-year period and showing he would be able to care for S.J.P.P. during his incarceration.

The natural right that exists between parents and their children is one of constitutional dimension. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right to "the companionship, care, custody and management" of his children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)). Therefore, in a case terminating parental rights, the proceedings are strictly scrutinized, and the involuntary termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.-- Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*; Tex. Fam. Code Ann. § 161.001 et. seq (West 2010). In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the movant must

establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001 and (2) that termination is in the best interest of the child.[2] Tex. Fam. Code Ann. § 161.001 (West 2010); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex.App.-- Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766.

In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In this context, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In determining a factual-sufficiency point, the higher burden of proof in termination cases also alters the appellate standard of review. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). "[A] finding that must be based on clear and convincing evidence cannot be viewed on appeal the same as one that may be sustained on a mere preponderance." *Id.* at 25. In considering whether evidence rises to the level of being

---

[2] Bill does not challenge the trial court's finding that termination is in S.J.P.P.'s best interest.

4

clear and convincing, we must consider whether the evidence is sufficient to reasonably form in the mind of the factfinder a firm belief or conviction as to the truth of the allegation sought to be established. *Id.* We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *J.F.C.,* 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Subsection 161.001(1)(Q) allows termination of parental rights when a parent knowingly has engaged in criminal conduct, resulting in the parent's conviction of an offense, and the parent is both incarcerated and unable to care for the child for at least two years from the date the termination petition was filed. Tex. Fam. Code Ann. § 161.001(1)(Q) (West 2010). Incarceration and a parent's inability to provide care are separate requirements for termination of parental rights under subsection 161.001(1)(Q)(ii). *In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.-- Fort Worth 2004, no pet.); *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.-- Houston [1st Dist.] 2002, no pet.). Subsection Q's two-year time period applies prospectively. *In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003).

That Bill knowingly engaged in criminal conduct and was convicted and incarcerated is not disputed. Bill's challenge focuses on the evidence his incarceration will continue for at least two years from the date the termination petition was filed, that

5

is, until April 13, 2012, and that he will be unable to care for his son during that time. Tex. Fam. Code Ann. § 161.001(1)(Q).

Bill testified he would be considered for parole in July 2011. He also acknowledged he was denied parole in July 2010 and his long-term projected release date is March 5, 2018. A letter from the Texas Department of Corrections was admitted into evidence, confirming this information. As noted, Bill testified he participated in a pre-release class in which only inmates expected to be released within two years may participate. He attributed his denial of parole in July 2010 to the fact he then had not yet completed the pre-release class.

Evidence of the availability of parole is relevant to determine whether the parent will be released within two years of the date the termination petition was filed. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). However, mere introduction of parole-related evidence does not prevent a fact-finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years. *Id.* Parole decisions are inherently speculative, and while all inmates doubtless hope for early release and can take positive steps to improve their odds, the decision rests entirely with the parole board. *Id.* Evidence of participation in a pre-release program available to inmates within two years of parole does not preclude a finding the parent will remain incarcerated. *Id.*

While the evidence illustrated the possibility of Bill's release prior to April 13, 2012, as the court determined on a similar record in *H.R.M.,* such evidence did not prevent the trial court from forming a firm belief or conviction he would remain incarcerated after that date. *H.R.M.,* 209 S.W.3d at 109. The trial court was free to

6

credit and give greater weight to the facts Bill was serving a 15-year sentence, had once been denied parole, and had a projected release date of March 5, 2018. *Id.* Viewing the evidence under the proper standards, we find the evidence before the trial court was sufficient to permit the court to form a firm conviction or belief Bill would remain incarcerated until at least April 13, 2012.

We find the evidence similarly sufficient that Bill would be unable to care for his son during his incarceration. We note initially that the requirement of showing an inability to care for a child is not met by evidence of incarceration alone. *In re Caballero*, 53 S.W.3d 391, 396 (Tex.App.—Amarillo 2001, pet. denied) (addressing term "care" in subsection (Q)). At the same time, evidence that the child resides with his mother does not preclude a finding Bill is unable to provide for him. *See H.R.M.*, 209 S.W.3d at 110 (absent evidence non-incarcerated parent agreed to care for child on behalf of incarcerated parent, merely leaving child with non-incarcerated parent does not constitute ability to provide care). Courts have determined that the factors to be considered when deciding whether an incarcerated parent is unable to care for a child include the availability of financial and emotional support. *See, e.g., In re B.M.R.*, 84 S.W.3d 814, 818 (Tex.App.—Houston [1st Dist.] 2002, no pet.). Holding that subsection Q applies prospectively rather than retroactively, the court in *A.V.*, described its aim as ensuring "that the child will not be neglected," because a parent "will be unable to provide for" the child during incarceration. *A.V.*, 113 S.W.3d at 360. Daniele testified Bill never provided support to S.J.P.P. She testified she alone supported their son and Bill was not ordered to pay child support. Bill acknowledges that until he is released, he

has neither the means to provide financial support to his son[3] nor anyone willing to care for S.J.P.P. in his stead.

Bill has not seen his child since S.J.P.P. was five months old. Bill argues on appeal, however, that he stayed in contact with S.J.P.P. by writing letters to him and thus provided him emotional support. He highlights his effort to maintain contact, including filing a motion for enforcement at one point, seeking to obtain a mailing address for his son. While Bill is correct that emotional support is an important element of care for a child, the concept of "care" in subsection Q clearly involves more than emotional support. *Caballero*, 53 S.W.3d at 396. The evidence to which Bill points speaks not at all, for example, to how S.J.P.P. will be fed, clothed, sheltered, or educated until Bill is released, or how the boy will be ensured the presence of nurturing adults. *See In re E.S.S.*, 131 S.W.3d at 640 (incarcerated parent proposed mother and brother as possessory conservators with visitation rights).

We overrule Bill's challenges to the sufficiency of the evidence termination was warranted under Family Code § 161.001(1)(Q). As noted, Bill does not challenge the court's finding that termination was in his son's best interest. Accordingly, we affirm the judgment of the trial court.

James T. Campbell
Justice

---

[3] Bill has two other children. He testified he does not provide support to them.