

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-14-00386-CV**

**IN THE INTEREST OF D.T., A CHILD**

_____

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 13-002641-CV-85**

**MEMORANDUM OPINION**

Raising one issue, Appellant M.T. (alias Max), the father of D.T., appeals the trial

court's termination of his parental rights after a bench trial.[1]  We will affirm.

In a proceeding to terminate the parent-child relationship brought under section

161.001, the Department must establish by clear and convincing evidence two elements:

(1) one or more acts or omissions enumerated under subsection (1) of section 161.001,

termed a predicate violation; *and* (2) that termination is in the best interest of the child.

TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex.

App.—Waco 2002, pet. denied).   The factfinder must find that both elements are

---

[1] The parental rights of D.T.'s mother, C.O., (alias Carla) were also terminated, but she has not appealed.

established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.).

The trial court found the following predicate violations as grounds for termination: (1) Max knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(D)); (2) Max engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being (Family Code subsection 161.001(1)(E)); (3) Max has been convicted for being criminally responsible for the death or serious injury of a child under Section 22.04 of the Penal Code (injury to a child) (Family Code subsection 161.001(1)(L)(ix)); and (4) Max failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the child (Family Code subsection 161.001(1)(O)). The trial court also found that termination of Max's parental rights was in D.T.'s best interest.

In his sole issue, Max asserts that the evidence is legally and factually insufficient to support the trial court's best-interest finding. Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the

matter on which the petitioner bears the burden of proof. *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal sufficiency review); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* at 266-67 (footnotes and citations omitted); *see C.H.*, 89 S.W.2d at 25.

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the

programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

Briefly, we note that Max's criminal history includes a conviction and prison sentence for injury to a child (injuring and killing the two-year-old daughter of his now-deceased wife while that child was in his care) and an earlier conviction for aggravated assault. He has an extensive history of drug abuse and several failed attempts at drug rehabilitation, though at the time of trial he had been sober for approximately two years and was living at a halfway house (a "sober-living home") with over a dozen other men. Right after Max was released from prison in 2009 and was on parole, he began a relationship with Carla, who was heavily involved in drugs. Carla already had a son, C.C., when she became pregnant with D.T. Max knew that Carla was using drugs while she was pregnant with D.T.

In October 2013, the Department became involved because of a report of bruising

on C.C.  At that time, Carla's mother was caring for C.C. and D.T., who was six-months old; she had been caring for them since shortly after D.T.'s birth.  Because Carla's mother admitted to drug use, Carla had mental-health and drug issues, and there was domestic violence between Carla and her boyfriend at the time, the Department had the children removed to foster care.  At the time of removal, Max had seen D.T. only two times; at his birth and one other time.  He also knew that Carla's mother was using drugs while she was caring for D.T. and C.C.  At the first adversary hearing, Max did not oppose the Department's continued temporary conservatorship of D.T.

Max admitted at trial that he was not in a position to have custody of D.T.  He said that he would not be comfortable raising D.T. by himself, and he is not allowed to be around children without a court order.  He does believe, however, that it would benefit D.T. if he were given a voice in where D.T. ends up.

Max contests the sufficiency of the evidence on only a few of the best-interest factors:  the parental abilities of the individuals seeking custody; the plans for the child by these individuals; and the stability of the home.  He asserts that the Department presented only "minimal" or "superficial" evidence about the foster family that the Department viewed as an adoptive placement for D.T., that the Department presented no evidence of possible alternatives if D.T.'s foster family proved unable or unwilling to adopt, and that there was evidence that Max was able to make decisions in D.T.'s best interest and would benefit D.T. if he were involved in finding a permanent placement.

In response, the Department notes that there is no requirement that the Department's plans for  a child be  definite before termination.  *C.H.*, 89 S.W.3d at 28

("[T]he lack of evidence about definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located."); *see also Spencer v. Tex. Dep't of Fam. & Prot. Servs.*, No. 03-10-00498-CV, 2010 WL 5464110, at *3-4 (Tex. App.—Austin Dec. 31, 2010, no pet.) (mem. op.) (lack of evidence for permanent placement or adoption is not dispositive of the best interest consideration).

The Department's recommendation was that Max's parental rights be terminated and that D.T. be adopted. Evangelic Sipp, a Department caseworker, testified that the Department's goal is unrelated adoption (not by a relative) by foster parents who would also adopt C.C., D.T.'s half-brother. They have been in the same foster placement since April 2014, and D.T. is "doing good" in his placement. He is walking, running and learning words, and he is "definitely a happy baby."

D.T. and C.C. are the only children in the foster home, and D.T. has his own bedroom with nice pictures on the wall. D.T. has his own crib and a bookshelf with toys and books, and he has appropriate clothing. Sipp stated that the home appeared safe and appropriate for D.T. The CASA volunteer described the home as nice and well-organized. D.T. is "very attached" to the foster parents; the CASA volunteer agreed that D.T. has bonded to the foster parents. The foster parents have indicated that they would like to adopt both boys. Sipp said that D.T. and C.C. are bonded and that it would not be in D.T.'s best interest to separate them. The CASA volunteer agreed with the Department's recommendations and goals.

Sipp testified that permanency is important to a child and that Max's uncertain situation was harmful to D.T. Max testified that it would be in D.T.'s best interest if his rights were terminated and D.T. were adopted by his current foster parents and C.C. were able to stay with D.T. He had considered relinquishing his parental rights but had not done so because Carla had not and because the Department had not guaranteed that D.T. would remain with his current foster parents.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Max's parental rights was in D.T.'s best interest. Viewing all the evidence in relation to the *Holley* factors, we hold that a reasonable factfinder could have reasonably formed a firm belief or conviction that termination was in D.T.'s best interest. The evidence is legally and factually sufficient on the best-interest finding, and we overrule Max's sole issue. The trial court's order of termination is affirmed.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed May 7, 2015
[CV06]

