COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-203-CV
 
 
 
IN 
THE INTEREST OF D.T.D. AND K.C.H., CHILDREN
 
 
------------
 
FROM 
THE 367TH DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Augustine 
Vernette D. appeals from the trial court’s order terminating her parental 
rights in her children, D.T.D. and K.C.H.[2]
        Based 
on the jury’s findings, the trial court terminated Augustine’s parental 
rights on the following grounds:
 
•Augustine 
had knowingly placed or knowingly allowed the children to remain in conditions 
or surroundings that endangered their physical or emotional well-being;
 
•Augustine 
had engaged in conduct or knowingly placed the children with persons who engaged 
in conduct that endangered their physical or emotional well-being;
 
•Augustine 
had failed to comply with the provisions of a court order that specifically 
established the actions necessary for her to obtain return of the children, who 
had been in the Texas Department of Family and Protective Services’ (DFPS’s) 
conservatorship as a result of their removal from Augustine due to abuse or 
neglect; and
 
•termination 
was in the children’s best interest.[3]
  
We 
affirm.
        Augustine’s 
court-appointed appellate counsel has filed a motion to withdraw as counsel and 
a brief in support of that motion. In the brief, counsel avers that, in his 
professional opinion, this appeal is frivolous.  Counsel’s brief and 
motion meet the requirements of Anders v. California[4] 
by presenting a professional evaluation of the record demonstrating why there 
are no arguable grounds for relief. This court has previously held that Anders 
procedures apply in parental rights termination cases.[5]
        Augustine’s 
counsel presents a discussion of four potential sources of error: whether the 
evidence is legally and factually sufficient to support the jury’s finding 
that Augustine knowingly placed or allowed the children to remain in conditions 
or surroundings that endangered their physical or emotional well-being (section 
161.001(D)); and whether the evidence is legally and factually sufficient to 
support the jury’s finding that Augustine engaged in conduct or knowingly 
placed the children with persons who engaged in conduct that endangered their 
physical or emotional well-being (section 161.001(E)).
        Augustine’s 
appellate counsel acknowledges that Augustine testified at trial and admitted 
facts that would justify termination of her parental rights under section 
161.001(O) on the ground that she did not comply with her service plan. We can 
affirm on an unchallenged, independent ground supporting termination, such as 
this one.[6]
        Counsel 
contends that we should, nonetheless, review the legal and factual sufficiency 
of the evidence to support termination under section 161.001(D) and (E) because 
termination on those grounds could have collateral consequences adverse to 
Augustine beyond this case: a future fact finder could terminate Augustine’s 
parental rights in after-born children if her parental rights in another child 
had previously been terminated under subsection (D) or (E).[7]
        Once 
an appellant’s court-appointed counsel files a motion to withdraw on the 
ground that the appeal is frivolous and fulfills the requirements of Anders, 
we are obligated to undertake an independent examination of the record and 
essentially to rebrief the case for the appellant to see if there is any 
arguable ground that may be raised on her behalf.[8]  
Accordingly, in light of the potential collateral consequences to Augustine, we 
will review the sufficiency of the evidence to support termination based on the 
“(D) and (E)” grounds.
        In 
proceedings to terminate the parent-child relationship brought under section 
161.001 of the family code, the State must establish one or more of the acts or 
omissions enumerated under subdivision (1) of the statute and must also prove 
that termination is in the best interest of the child.[9] 
Both elements must be established; termination may not be based solely on the 
best interest of the child as determined by the trier of fact.[10]
        The 
higher burden of proof in termination cases alters the appellate standard of 
legal sufficiency review.[11]  In reviewing the 
evidence for legal sufficiency in parental termination cases, we must determine 
“whether the evidence is such that a factfinder could reasonably form a firm 
belief or conviction” that the grounds for termination were proven.[12]  We must review all the evidence in the light most 
favorable to the finding and judgment.[13]  This 
means that we must assume that the factfinder resolved any disputed facts in 
favor of its finding if a reasonable factfinder could have done so.[14]  We must also disregard all evidence that a 
reasonable factfinder could have disbelieved.[15]  
That is, we must “credit[] favorable evidence if reasonable jurors [or a 
reasonable factfinder] could” and “disregard[] contrary evidence unless 
reasonable jurors [or a reasonable factfinder] could not.”[16]  
We must consider, however, undisputed evidence even if it does not support the 
finding.[17]
        The 
higher burden of proof in termination cases also alters the appellate standard 
of factual sufficiency review.[18]  Our inquiry 
here is whether, on the entire record, a factfinder reasonably could form a firm 
conviction or belief that the parent violated one of the conduct provisions of 
section 161.001(1) and that the termination of the parent’s parental rights 
would be in the best interest of the child.[19]
        Nonexclusive 
factors that the trier of fact in a termination case may use in determining the 
best interest of the child include:
 
(1) the desires of the child;
 
(2) 
the emotional and physical needs of the child now and in the future;
 
(3) 
the emotional and physical danger to the child now and in the future;
 
(4) 
the parental abilities of the individuals seeking custody;
 
(5) 
the programs available to assist these individuals to promote the best interest 
of the child;
 
(6) 
the plans for the child by these individuals or by the agency seeking custody;
 
(7) 
the stability of the home or proposed placement;
 
(8) 
the acts or omissions of the parent which may indicate that the existing 
parent-child relationship is not a proper one; and
 
(9) 
any excuse for the acts or omissions of the parent.[20]
 
 
These 
factors are not exhaustive.  Some listed factors may be inapplicable to 
some cases; other factors not on the list may also be considered when 
appropriate.[21]
        Termination 
based on section 161.001(E) is proper if clear and convincing evidence shows 
that the parent engaged in conduct or knowingly placed the children with persons 
who engaged in conduct that endangered the children’s physical or emotional 
well-being.[22]  Subsection E requires us to 
look at the parent's conduct alone, including actions, omissions, or the 
parent's failure to act.[23]
        “Endanger” 
means more than a threat of metaphysical injury or the possible ill effects of a 
less-than-ideal family environment, but it is not necessary that the conduct be 
directed at the child or that the child actually suffer injury.[24]  For instance, physical abuse is not required when 
a parent's omission, such as her neglect, has endangered the children.[25]  Further, when a parent's mental state allows her 
to engage in conduct that endangers the physical or emotional well-being of the 
child, that conduct has bearing on the advisability of terminating the parent's 
rights.[26]
        In 
this case, the record shows as follows:
        Dayana 
Alcazar, a CPS investigator, testified regarding the unsafe conditions of 
Augustine’s apartment, including Alcazar’s repeated findings of filth, dirty 
clothes, spoiled food, and stained and torn mattresses without sheets.  
Alcazar also testified that Augustine had little or no formula in her home for 
K.C.H.,[27] as well as an insufficient amount of food 
to feed the rest of the family members who lived with her.  In addition, 
Augustine admitted at trial that she was not in a position to adequately care 
for her children.
        Further, 
Denton County MHMR Intake Specialist Tammy Weppelman testified that, just over a 
month before trial, Augustine had met the criteria for being in crisis and was 
having suicidal ideations.  Weppelman testified that Augustine said she had 
a history of hearing voices, that she was thinking about killing herself, that 
she had over twenty suicide attempts, and that she had a history of drinking 
bleach and cutting herself with knives.
        Other 
evidence presented at trial shows that Augustine refused to take numerous drug 
tests, had used crack, barbiturates, and marijuana, and had tested positive for 
crack several times, including a couple of weeks before trial.  Further, 
there is evidence that Augustine angered easily, had a history of aggressive 
behavior, would get drunk and fight, had engaged in thirty or more fights 
intending to hurt people, and had been arrested in 1999 and 2000 for assaults 
for which the charges had later been dismissed.
        Augustine 
also allowed D.T.D. to stay with Augustine’s sister and brother-in-law, Mona 
and Todd Perry.  A CASA advocate testified that Todd and Mona had extensive 
histories of abuse and criminal activity.  For example, Mona’s children 
had been removed from her care during the time D.T.D. was staying with 
her.  In addition, Todd had pleaded guilty to and received two years’ 
probation for assaulting a child and had also pleaded guilty to aggravated 
assault on Mona.
        There 
is also evidence that Augustine repeatedly left the children in the care of 
Alvin, their father, even though Alvin had been convicted of assaulting 
Augustine when she was four months pregnant with D.T.D.  Further, Alvin 
admitted that he had been convicted for a 1995 assault on his then 
eleven-year-old son.
        In 
addition, Alvin testified that he was an alcoholic, sometimes drinking as many 
as ten 40-ounce beers a day. He also testified that he smoked crack one or two 
times per week, and there was evidence at trial that he had tested positive for 
cocaine. The jury easily could have disbelieved Augustine’s assertions at 
trial that Alvin was never under the influence of these substances while 
watching the children and Alvin’s assertion that the children were never 
around when he smoked crack. Alvin claimed at trial that his drinking and drug 
abuse did not impair his parenting abilities and that he was a better parent 
while smoking crack because it caused him to cook and clean the house.
        D.T.D. 
also had numerous scars or marks on his body: a bruise on his neck, a circular 
scar on the right side of his chest, a scar on his face, several lineal scars on 
his back, some diagonal white marks across his buttocks, and three evenly-spaced 
lineal scars on his buttocks. Although the evidence did not expressly confirm 
that either parent caused a majority of the scars,[28] 
the scars’ existence was, at the very least, further evidence of D.T.D.’s 
dangerous environment.  For example, Alvin testified that D.T.D. got the 
three evenly-spaced lineal scars on his buttocks at the age of two or three 
after a bath when he was drying himself in front of a space heater that had been 
nailed against the wall because the hot water had gone out.
        This 
evidence is sufficient to produce in the minds of the jury a firm belief or 
conviction that Augustine had engaged in conduct or knowingly placed the 
children with persons who engaged in conduct that endangered the children’s 
physical or emotional well-being.[29]  
Accordingly, the evidence is legally and factually sufficient to support 
termination of Augustine’s parental rights under section 161.001(E).[30]  We overrule appellate counsel’s potential 
sources of error based on section 161.001(E).[31]
        Finally, 
there is evidence that Augustine was not committed to the children in such a way 
as to ensure their well-being.  Specifically, the evidence shows that D.T.D. 
was moderately mentally retarded, suffered from severe depression, had special 
needs that would be very demanding of his caregiver, and would need a caregiver 
who was very structured, patient, stable, and able to provide appropriate 
behavior modifications.  But when the CASA advocate spoke with Augustine 
about D.T.D.’s special needs and offered to meet and discuss what D.T.D. would 
need if he were to move back in with her, Augustine agreed to meet but never 
contacted the CASA advocate about it.
        The 
CASA advocate also testified that Augustine did not indicate having any insight 
into what D.T.D.’s needs were and had even indicated her belief that D.T.D. 
was very intelligent and knew his colors, numbers, and letters at an early 
age.  The jury also could have questioned Augustine’s commitment to D.T.D. 
and K.C.H. when it heard that Augustine did not comply with her service plan and 
ignored K.C.H. during a good part of the time when she visited the children, and 
when it saw Augustine smile inappropriately as she testified at trial.
        In 
contrast, the evidence shows that the children’s therapeutic foster mother 
seemed committed to D.T.D., acted like she loved the children, had bonded with 
them, seemed like she was doing a good job, seemed especially patient about 
D.T.D.’s mental retardation, seemed to understand D.T.D.’s needs, and was 
loving and nurturing.  CASA advocate Robin Napier testified that the foster 
mother had made a lot of progress with both of the children and that they were 
thriving under her care.  Napier further testified that the foster mother 
was eligible to adopt the children and had expressed an interest in adoption.
        This 
evidence is legally and factually sufficient to support the jury’s finding 
that termination was in the children’s best interest.[32]
        We 
turn now to Augustine’s pro se brief. In her brief, she argues that DFPS 
failed to prove the grounds alleged for termination.  Augustine also 
asserts that she did her best to comply with her service plan and take care of 
her children, and she attempts to explain why she was not successful in these 
endeavors.  She contends that her attorney failed to present this evidence 
at trial.
        As 
we have discussed, however, the record clearly shows that DFPS did prove the 
alleged grounds for termination.  Further, the record shows that 
Augustine’s attorney presented at trial all the evidence discussed in her pro 
se brief.  Therefore, we overrule the points raised in Augustine’s pro se 
brief.
        In 
addition to the matters we have already addressed, our independent review of the 
record shows that there is no error that arguably might support an appeal or 
require reversal.  There are no jurisdictional errors.  DFPS had 
standing to petition for termination, and the trial court had jurisdiction over 
the suit.[33]  Further, the order of termination 
was rendered by the first anniversary of the date on which the trial court 
appointed DFPS temporary managing conservator of the children.[34]
        Finally, 
the record shows that Augustine’s trial counsel rendered her reasonably 
effective legal assistance.[35]  Although 
Augustine testified at trial and admitted facts that would justify termination 
on the ground that she did not comply with her service plan, appellate counsel 
points out that her trial attorney’s strategy was to make these admissions and 
then ask the jury not to terminate Augustine’s parental rights but instead to 
grant her possessory conservatorship of the children.  Appellate counsel 
states that this trial strategy appears to have been the only reasonable one 
based on the facts of this case, which were “overwhelming[ly]” against 
Augustine.  We agree.
        Having 
disposed of appellate counsel’s potential sources of error and Augustine’s 
complaints raised in her pro se brief, and conducted our own independent review 
of the record, we grant appellate counsel’s motion to withdraw and affirm the 
trial court’s order of termination.
 
  
                                                                  PER 
CURIAM
 
 
 
PANEL 
F:   CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.
 
DELIVERED: 
August 4, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The trial court also terminated the parental rights of the children’s father, 
Alvin Douglas H., but he has not appealed.
3.  
See Tex. Fam. Code Ann. § 
161.001(1)(D), (E), (O), (2) (Vernon 2002).  The jury also found that 
Augustine contumaciously refused to submit to a reasonable and lawful court 
order under subchapter D, chapter 261 of the family code. Id. § 
161.001(I).  DFPS asserts that the trial court’s failure to include this 
ground in its termination order was simply a clerical error.  Based on our 
disposition of this appeal, we need not consider this matter.  See Tex. R. App. P. 47.1.
4.  
386 U.S. 738, 87 S. Ct. 1396 (1967).
5.  
In re K.M., 98 S.W.3d 774, 776-77 (Tex. App.—Fort Worth 2003, no pet.).
6.  
See Richardson v. Green, 677 S.W.2d 497, 499 (Tex. 1984); Green v. 
Tex. Dep’t of Protective and Regulatory Servs., 25 S.W.3d 213, 219-20 
(Tex. App.—El Paso 2000, no pet.).
7.  
See Tex. Fam. Code Ann. § 
161.001(M).
8.  
See Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).
9.  
Tex. Fam. Code Ann. § 161.001 
(Vernon 2002); Richardson, 677 S.W.2d at 499; Swate v. Swate, 72 
S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).
10.  
Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
11.  
In re J.F.C., 96 S.W.3d 256, 265 (Tex. 2002).
12.  
Id. at 265-66; see also Tex. 
Fam. Code Ann. § 101.007 (Vernon 2002).
13.  
J.F.C., 96 S.W.3d at 266.
14.  
Id.
15.  
Id.
16.  
City of Keller v. Wilson, 48 Tex. Sup. Ct. J. 848, 849, 2005 WL 1366509, 
at *1 (Tex. June 10, 2005).
17.  
J.F.C., 96 S.W.3d at 266.
18.  
In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).
19.  
Id. at 28.
20.  
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).
21.  
C.H., 89 S.W.3d at 27.
22.  
Tex. Fam. Code Ann. § 161.001(E).
23.  
In re D.M., 58 S.W.3d 801, 811-12 (Tex. App.—Fort Worth 2001, no pet.).
24.  
Boyd, 727 S.W.2d at 533.
25.  
Phillips v. Tex. Dep’t of Protective and Regulatory Servs., 25 S.W.3d 
348, 354 (Tex. App.—Austin 2000, no pet.).
26.  
In re J.I.T.P., 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 
2003, no pet.); In re C.D., 664 S.W.2d 851, 853 (Tex. App.—Fort Worth 
1984, no writ).
27.  
K.C.H. was four months old when DFPS petitioned for termination.
28.  
There is evidence that Augustine was responsible for the scar on D.T.D.’s 
face.
29.  
See Tex. Fam. Code Ann. 
§§ 101.007, 161.001(E).
30.  
See id. § 161.001(E); J.F.C., 96 S.W.3d at 265-66; C.H., 
89 S.W.3d at 25.
31.  
In light of this holding, we need not consider appellate counsel’s potential 
sources of error based on section 161.001(D).  See Tex. Fam. Code Ann. § 161.001; Tex. R. App. P. 47.1.
32.  
See Holley, 544 S.W.2d at 371-72; see also C.H., 89 S.W.3d at 27.
33.  
See Tex. Fam. Code Ann. § 
102.003(5) (Vernon Supp. 2004-05) §§ 152.202, 262.001(a), 262.002 (Vernon 
2002).
34.  
See id. § 263.401(a) (Vernon 2002).
35.  
See In re M.S., 115 S.W.3d 534, 544-45 (Tex. 2003) (holding that 
statutory right to counsel in parental rights termination cases embodies right 
to effective counsel, which is governed by Strickland v. Washington 
standard); see also Strickland v. Washington, 466 U.S. 668, 687, 
104 S. Ct. 2052, 2064 (1984) (holding that appellant claiming ineffective 
assistance must show both that her counsel's performance was deficient and that 
the deficient performance prejudiced the defense).