

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00039-CV

## IN THE INTEREST OF Z.I.A.R., G.D.R.,
## R.G.A.R., AND R.L.F.R., CHILDREN,

### From the County Court at Law
### Ellis County, Texas
### Trial Court No. 89,535 CCL

## MEMORANDUM  OPINION

Raising one issue, Appellant K.R., the mother of the four children in this case,[1] appeals the trial court's termination of her parental rights after a bench trial.[2]  We will affirm.

In a proceeding to terminate the parent-child relationship brought under section 161.001, the Department must establish by clear and convincing evidence two elements:

---

[1] The children and their ages at the time of trial are:  Z.I.A.R., age twelve; G.D.R., age ten; and twins R.G.A.R. and R.L.F.R., age eight.

[2] The parental rights of G.R. (alias "Gary"), the children's father, were also terminated, but he has not appealed.  To protect the children's identity, we will use aliases for their family members in this opinion. *See* TEX. R. APP. P. 9.8(b)2).

(1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2015); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Spangler v. Texas Dep't of Prot. & Reg. Servs.,* 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.).

The parental rights of Appellant and Gary to J.H., their oldest child, had previously been terminated. J.H. tested positive for drugs at birth because Appellant had used drugs during her pregnancy. J.H. was three months old when he was removed from Appellant's care in 2000 because of concerns of substance abuse, inconsistent participation in the offered Family Based Safety Services, and lack of stability. During the case involving J.H., there was lack of cooperation by Appellant and Gary; they were inconsistent with their participation in their services, their contact with the Department, and their contact with J.H. Neither Appellant nor Gary completed their services, resulting in the paternal grandparent receiving permanent managing conservatorship of the child. Ultimately, J.H. was adopted by his paternal grandmother.

In this case, the twins tested positive for drugs (methamphetamine) at birth. Appellant admitted that she had relapsed and used drugs while pregnant. The

Department removed the twins from Appellant's care but placed Z.I.A.R. and G.D.R. in a safety placement with Appellant's father ("Grandfather"). Appellant completed services, and the children were returned to her care. At the time the children were returned to her care, she was living with Grandfather.

The Department conducted investigations into medical neglect in 2005 that was ruled unable to determine, a physical-neglect allegation in 2006 ruled unable to determine, a neglectful-supervision allegation in 2009 that was ruled out, and a sexual-abuse allegation that was also ruled out.

Lindsey Warren, a Department Conservatorship Worker, testified that the Department received an April 26, 2014 referral alleging that Appellant was drinking alcohol, was falling asleep early during the day and leaving the children unsupervised, and there were also allegations that she was abusing drugs and leaving the children to fend for themselves. Appellant was confronted about the allegations and admitted to marijuana use, but after further testing, Appellant also tested positive for opiates and methamphetamine. During the Department's investigation, Appellant submitted to hair testing that was positive for morphine and heroin. At the conclusion of the Department's investigation, Appellant was found "reason to believe" for neglectful supervision. The children were removed for abuse and neglect on May 29, 2014.

In summary, the evidence shows that Appellant endangered the children through her history of illegal drug use, domestic violence, and criminal conduct.[3] She used drugs

---

[3] Appellant has been arrested for domestic violence and assault. During the pendency of this case, Appellant was arrested for public intoxication, assault, and criminal mischief, and she was convicted of

during two pregnancies and during the pendency of the case. She engaged in criminal conduct during the pendency of the case and while her parental rights were in jeopardy. Appellant failed to complete the tasks on her service plan—specifically her counseling and substance-abuse treatment. She failed to be employed and she failed to establish safe and stable housing for the children. At the time of trial, the evidence demonstrated that Appellant was continuing to abuse drugs and alcohol and was unable to meet the needs of the children.

The trial court found the following predicate violations as grounds for termination: (1) Appellant knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being (Family Code subsection 161.001(1)(D)); (2) Appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being (Family Code subsection 161.001(1)(E)); and (3) Appellant failed to comply with provisions of a court order specifically establishing actions necessary for the parent to obtain return of the children (Family Code subsection 161.001(1)(O)). The trial court also found that termination of Appellant's parental rights was in the children's best interest. In its findings of fact and conclusions of law, the trial court specifically found that appointment of Grandfather as Permanent Managing Conservator "is not in the children's best interest."

In her sole issue, Appellant asserts: "Is there factually sufficient evidence to

assault causing bodily injury (with an offense date of March 1, 2015) and was sentenced to 150 days' confinement. She spent two months in jail and was given a sentence of time served for all three charges. Appellant testified that she was arrested again for public intoxication during the pendency of the case.

support the termination of Appellant's parental rights and the award of Permanent Managing Conservator to her sister and her wife?" The trial court's termination order appoints the Department as the children's Permanent Managing Conservator. Appellant mistakenly asserts that her sister "Kelly" and spouse "Marla" were appointed Permanent Managing Conservator and contends that Grandfather should have been appointed Permanent Managing Conservator. Accordingly, we overrule this part of Appellant's issue.

As the Department points out, Appellant's brief does not challenge any of the three predicate violations for termination. Therefore, the only issue before us is whether the evidence is factually sufficient to support the trial court's best-interest finding. While Appellant's issue does not mention a legal-sufficiency challenge, her summary of the argument contends that the evidence is "factually and legally insufficient to support termination." Therefore, we will also conduct a legal-sufficiency review of the trial court's best-interest finding.

Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.,* 96 S.W.3d 256, 264-68 (Tex. 2002) (discussing legal sufficiency review); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) (discussing factual sufficiency review).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence

in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

[T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*Id.* at 266-67 (footnotes and citations omitted); *see C.H.*, 89 S.W.2d at 25.

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent.

*Dupree v. Tex. Dep't Prot. & Reg. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable, permanent home for a child is a compelling state interest. *Id.* at 87. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

We now turn to the evidence on the best-interest factors.

### *The Desires of the Children*

The children have been in the care of Kelly and Marla (the "Foster Parents") since August 11, 2015. Warren testified that the children have indicated in counseling their desire to remain with the Foster Parents. The notes from their therapist Sarah Buckley-Taylor clearly reflect the children's desires to be adopted by the Foster Parents, and the children also report that they are happy with the Foster Parents.

Grandfather testified that the Foster Parents love the children and are good people, and he admitted that he had previously recommended his daughter Kelly as a possible permanent placement option for the children. Marlana Gray, the court-appointed guardian ad litem for the children from CASA, testified that the children are doing "fantastic" and that all of their needs are "[a]bsolutely" being met in their current placement with the Foster Parents.

### *The Emotional and Physical Needs of the Children Now and in the Future*
### *The Emotional and Physical Danger to the Children Now and in the Future*

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet.

denied); *Ray v. Burns,* 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.,* No. 13-06-00237-CV, 2007 WL 293023, at *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage). Often, the best interest of the child is infused with the statutory offensive behavior. *In re W.E.C.,* 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.). Particularly when the evidence shows that the parental relationship endangered the child's physical or emotional well-being, evidence of the parental misconduct leading to the removal and subsequent termination should be considered when reviewing the best interest of the child. *In re C.C.,* No. 13-07-00541-CV, 2009 WL 866822, at *10 (Tex. App.—Corpus Christi Apr. 2, 2009, pet. denied) (mem. op.). A parent's history, admissions, drug abuse, and inability to maintain a lifestyle free from arrests and incarcerations are relevant to the best-interest determination. *In re D.M.,* 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). A parent's engaging in criminal conduct endangers the emotional well-being of a child because of the parent's resulting incarceration. *See Karl v. Tex. Dep't Prot. & Reg. Servs.,* No. 03-03-00655-CV, 2004 WL 1573162, at *2-3 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.); *see also In re R.W.,* 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child").

Appellant was incarcerated twice during the pendency of this case, failed to demonstrate stability, and was admittedly unable to care for the children herself at the time of trial. Conversely, the children are now with family and "are stable in their

environment." Based on the evidence of Appellant's criminal conduct throughout the lives of the children and during the pendency of this case while her parental rights were in jeopardy, the trial court could have determined that her incarceration history is relevant to her ability to meet the children's present and future physical and emotional needs and that her incarcerations "makes [their] future uncertain." *In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.—Amarillo 1999, no pet.).

Appellant failed to comply with her court-ordered services and therefore failed to address her drug use, failed to complete counseling, failed to obtain employment or stable housing, and failed to refrain from committing crimes. Because Appellant failed to take advantage of any of the programs designed to address the factors that make her a dangerous parent, the trial court could have concluded that she would not seek out such programs in the future. Based on the evidence of Appellant's failure to comply with her court-ordered services, and in particular her drug-treatment services, the trial court was free to infer that her failure to complete her services indicate a continued danger to the children. *See In re B.A.*, No. 04-13-00246-CV, 2013 WL 4679089, at *1 (Tex. App.—San Antonio Aug. 28, 2013, no pet.) (mem. op.) (parent's failure to complete services directly related to reasons for child's removal indicates continued danger to child.).

Appellant admitted to having an ongoing substance-abuse problem. Gray testified that Appellant is not ready or able to care for the children, and Gray was concerned with Appellant's continuing to color and cut her hair in violation of court orders because by doing so, the "hair … test won't show up, honestly;" therefore, Gray opined that Appellant had never demonstrated "complete honesty" about "totally

getting off of drugs," indicating a "red flag." Gray expressed a concern that Appellant has not demonstrated a "long-term ability to stay clean from drugs and being arrested." Based on the evidence of ongoing drug abuse, including before and after the children's birth, the trial court could have reasonably formed a belief or conviction that Appellant is unable to provide a safe environment for the children, cannot meet the children's present and future physical and emotional needs, and that her continuing care of the children presents a present and future danger to their safety. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (noting that parent's continued drug use poses emotional and physical danger to child now and in future); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) (parent's illegal drug use is relevant to determining present and future risk to child's physical and emotional well-being.).

In resolving these two factors in favor of termination, the trial court could have credited the undisputed evidence that Appellant: (1) has a lengthy history of drug and alcohol abuse; (2) endangered the children by using drugs while pregnant; (3) failed to provide the children with stability throughout their lives; (4) exposed the children to domestic violence; (5) engaged in criminal conduct throughout the lives of the children and during the pendency of this case; (6) failed to comply with court-ordered services, including drug treatment; (7) continued to use drugs throughout the pendency of the case; and (8) failed to obtain employment and stable housing. This evidence of Appellant's endangering conduct, past inability to refrain from criminal conduct, and drug use supports an inference that because of her past actions, Appellant's future

conduct will continue to pose a danger to the children's emotional and physical well-being.

***The Parenting Ability of the Individuals Seeking Custody***
***The Programs Available to Assist the Party Seeking Custody***

That a parent has poor parenting skills and "was not motivated to learn how to improve those skills" is evidence supporting a finding that termination is in the child's best interest. *Wilson v. State*, 116 S.W.3d 923, 925 (Tex. App.—Dallas 2003, no pet.). In reviewing the parental abilities of a parent, a factfinder can consider the parent's past neglect or past inability to meet the physical and emotional needs of their children. *D.O. v. Tex. Dep't of Human Servs.*, 851 S.W.2d 351, 356 (Tex. App.—Austin 1993, no writ), *disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267 & n.39. "[E]vidence of [parent's] repeated incarcerations suggests […] that his parenting skills are seriously suspect." *In re A.W.*, No. 06-07-00118-CV, 2008 WL 360825, at *3 (Tex. App.—Texarkana Feb. 12, 2008, no pet.) (mem. op.). Further, the factfinder can infer from a parent's failure to take the initiative to avail herself of the programs offered to her by the Department that the parent "did not have the ability to motivate herself to seek out available resources needed…now or in the future." *W.E.C.*, 110 S.W.3d at 245.

Appellant's brief admits that she lacks "full parental skills" and that she has relied upon her father (Grandfather) and her sister Kelly for support. At trial, Appellant admitted that she had "struggled" in the past to provide the children with a safe and drug-free home. Grandfather admitted that without his financial assistance, Appellant would have a "hard time" getting by.

During the Department's case involving J.H., Appellant failed to comply with Family Based Safety Services, resulting in J.H.'s removal, and then when she failed to comply with services in the legal case, it resulted in the child being placed in the permanent conservatorship of his paternal grandmother. During the Department's case involving just the twins, Appellant completed services and the children were returned to her care. In this case, Appellant failed to comply with her court-ordered services and failed to address her drug use, failed to complete counseling, failed to obtain employment or stable housing, and failed to refrain from committing crimes. From this evidence, the trial court could have determined that Appellant was not motivated to learn to improve those skills, supporting its best-interest determination. And from the evidence of Appellant's multiple arrests and incarcerations, to include during the pendency of this case, the trial court could have concluded that Appellant's parenting skills are "seriously suspect." *A.W.*, 2008 WL 360825, at *3.

In determining that Appellant has poor parenting abilities and cannot meet the physical and emotional needs of the children, the trial court could have considered the previously discussed evidence of Appellant's: (1) history of drug abuse; (2) drug abuse while pregnant with J.H. and the twins; (3) failure to avail herself of services; (4) engaging in criminal conduct during the pendency of the case while her parental rights were in jeopardy; and (5) failure to secure employment and safe and stable housing. *D.O.*, 851 S.W.2d at 356.

***The Plans for the Children by the Individuals or by the Agency Seeking Custody***
***The Stability of the Home or Proposed Placement***

The factfinder may compare the parent's and the Department's plans for the children and consider whether the plans and expectations of each party are realistic or weak and ill-defined. *Id.*

A parent's failure to show that he or she is stable enough to parent a child for any prolonged period entitles the factfinder "to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption." *In re B.S.W.*, No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.). A factfinder may also consider the consequences of its failure to terminate parental rights and that the best interest of the child may be served by termination so that adoption may occur rather than the impermanent foster-care arrangement that would result if termination did not occur. *D.O.*, 851 S.W.2d at 358. The goal of establishing a stable, permanent home for a child is a compelling state interest. *Dupree,* 907 S.W.2d at 87.

The Department's plan for the children at trial was termination of parental rights and adoption. Gray's plan was to keep the children in the family, specifically with the Foster Parents, "who have been stable for long periods of time. … And I recommend that they stay in a stable environment with the family."

The Foster Parents testified that they intend to adopt the children should they become available for adoption, and should they adopt the children, they plan to continue to foster contact between the children and Appellant, if appropriate.

Appellant's plan, if the children were returned to her care, is to live with Grandfather (her father). Appellant testified that if the trial court were to place the children with Grandfather, her plan would be to go to his home every day to help take care of the children. Grandfather admitted that, if the children are placed with him, he would need Appellant's assistance.

Kelly testified that she did not believe that Grandfather (also her father) was capable of helping Appellant provide a safe and appropriate home for the children because "they've already tried doing that once before." Marla expressed concern about Grandfather's ability to care for the children, in part because of his anger issues. Grandfather's anger issues were echoed by Gray in her summation and by the notes from Z.I.A.R.'s therapist where Z.I.A.R. complains about Grandfather being "so angry all the time." Marla related that Grandfather is impatient with the children and "yells a lot." Marla was additionally concerned because Grandfather has continuously put Appellant's best interest ahead of the children's best interest.

Warren and Gray expressed concern because of Grandfather's health and his continued belief that Appellant is capable of caring for the children despite the fact that she has not completed her services. Further concern was that, despite Appellant's testimony that she was addicted to heroin all of 2014, Grandfather said that he "never got the impression" that Appellant was using drugs during the time that he was the children's caregiver.

Gray testified that the children need stability more than anything. Warren testified that it is in the children's best interest to remain in the safe and stable environment that

they have been in with the Foster Parents, the "most stable environment that they've ever been in." Appellant agreed that the children needed a "stable home" in the future. Kelly testified that her intent is to "make sure that the kids have a stable place to live and be and grow up." Warren testified that the Foster Parents are approved and licensed foster parents.

The trial court could have considered Appellant's loosely defined plan, her history of instability throughout the children's lives and the case, and concerns related to her ongoing drug use and criminal conduct and compared it to the Department's plan of adoption and concluded that permanency and stability for the children could be achieved only through termination of Appellant's parental rights so that the children may be adopted.

Appellant's principal contention that termination is not in the children's best interest is the Department's plan of placing the children with the Foster Parents with the goal of adoption. The only evidence that Appellant points to as support for her contention is Marla's testimony that the children sometimes call her "Uncle" and that the Foster Parents do not consistently take the children to church. Marla testified that she and Kelly have spoken with the children's therapist about the children being raised by them and that the therapist replied that there were no issues with the children that needed "particular attention and concern."

### Acts or Omissions of the Parent Indicating that Parent-Child Relationship Is Not Proper Excuses for Acts or Omissions

The evidence discussed above indicates that Appellant's relationship with the

children is not a proper one, and Appellant has not offered any excuses for her acts or omissions on appeal.

Considering all the evidence in relation to the *Holley* factors in the light most favorable to the trial court's best-interest finding, we hold that a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant's parental rights was in the children's best interest. Viewing all the evidence in relation to the *Holley* factors, we hold that a reasonable factfinder could have reasonably formed a firm belief or conviction that termination was in the children's best interest. The evidence is legally and factually sufficient on the best-interest finding, and we overrule Appellant's sole issue. The trial court's order of termination is affirmed.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
  (Chief Justice Gray concurs in the judgment which terminates Appellant's parental rights to the four children and appoints the Department Permanent Managing Conservator. A separate opinion will not issue.)
Affirmed
Opinion delivered and filed August 3, 2016
[CV06]

