

**IN THE
TENTH COURT OF APPEALS**

_____

**No. 10-21-00176-CV**

**IN THE INTEREST OF K.B.D.,
A CHILD**

_____

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2020-1390-3**

**MEMORANDUM OPINION**

In one issue, the father ("Father") of K.B.D. appeals the termination of his parental rights. Father argues that the Department of Family and Protective Services ("the Department") presented no evidence or factually insufficient evidence to prove that termination was in the best interest of K.B.D. Father does not contest the trial court's finding that he violated § 161.001(b)(1)(O) of the Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). We will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Department began an investigation in March 2020 after a referral from law enforcement. The mother ("Mother") of K.B.D. was stopped for a traffic violation.[1] Narcotics paraphernalia and a machete were found in her vehicle, along with K.B.D. and one of his siblings. At that time, K.B.D. was four years old. The Department determined after its initial investigation that Mother had voluntarily left all the children in the custody of their maternal grandmother.

When the Department investigator interviewed Mother, Mother reported that she had numerous mental health issues and an ongoing history of methamphetamine use. Mother also complained that Father was using drugs and alcohol and that he had committed acts of domestic violence. During the course of the Department's investigation, Mother evaded all requests for drug tests. However, Mother was on probation[2] at the time of the investigation. Mother was required to complete drug testing as a term of her probation and tested positive for both methamphetamine and marijuana. Mother was arrested for engaging in organized criminal activity in May 2020 while the investigation was ongoing, and the children were placed under the Department's conservatorship. Mother pleaded guilty to engaging in organized criminal activity pursuant to a plea agreement and was incarcerated in the Texas

---

[1] Mother has two other children by two different men. Mother's parental rights to all three children were terminated as part of this proceeding, and she has not appealed. The father of one of the other children is deceased. The final father's parental rights were also terminated, and he has not appealed.

[2] The record is unclear whether Mother was on probation or parole. The Department investigator testified that the information regarding the drug tests was provided by Mother's probation officer. The Final Report to the Court prepared by the Department and admitted as State's Exhibit No. 1 at the final termination hearing reflects that Mother was on parole at the time the report was prepared.

Department of Criminal Justice-Correctional Institutions Division for a term of fifteen years. The Department's caseworker testified that Mother's projected release date is 2035.

Father was paroled in January 2020 after serving a two-year sentence for evading arrest and aggravated assault with a deadly weapon. Father's projected release date from parole is January 2022. The Department investigator spoke with Father shortly after the initial referral. Father told the investigator that he was unable to care for K.B.D. at that time. Father was unemployed and did not have a stable residence that the Department could verify. Father suggested his sister ("Aunt") as a caretaker for K.B.D. K.B.D. was first placed with his maternal grandmother and then with Aunt and her husband after K.B.D. displayed behavioral issues. The other children remained with their maternal grandmother. Aunt and her husband sought to adopt K.B.D. Shortly before the final termination hearing, Aunt and her husband separated after an incident of domestic violence. Aunt remained willing to adopt K.B.D. after the separation, testifying that her husband was no longer part of the adoption plan. The Department case worker believed that K.B.D. was safe with Aunt and had bonded with Aunt.

Father reported that he had no contact with K.B.D. while he was incarcerated. Father testified that he had a "fluid" co-parenting arrangement with Mother until 2017 when he reported her to the Department. After that, he noted that their "relationship went down the drain," ending the "fluid" co-parenting. Father reported Mother to the Department again in 2018, but the Department took no action in either 2017 or 2018.

Father initially refused to cooperate with the Department, including drug testing, as he believed that the removal of the children was due to Mother's actions. Father eventually signed a family service plan, but failed to complete the requirements: he did not maintain a safe and stable home; he did not maintain employment; he was incarcerated twice for parole violations; he did not keep in regular communication with the Department's case worker; he tested positive for methamphetamine and failed to comply with requests for drug testing; he did not complete an evaluation for mental health and substance abuse; he did not complete counseling; he did not begin anger management classes; and he failed to maintain regular communications with K.B.D.

AUTHORITY

BURDEN OF PROOF

In a proceeding to terminate the parent-child relationship brought under § 161.001 of the Family Code, the Department must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1) of § 161.001, termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014); *Swate*, 72 S.W.3d at 766. "Clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as

to the truth of the allegations sought to be established." *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)).

STANDARD OF REVIEW

The standards in termination cases are well established. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (legal sufficiency); *see also In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding to determine whether a trier of fact could reasonably have formed a firm belief or conviction about the truth of the Department's allegations. *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *J.F.C.*, 96 S.W.3d at 266. We do not, however, disregard undisputed evidence that does not support the finding. *J.F.C.*, 96 S.W.3d at 266.

In reviewing the factual sufficiency of the evidence, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id.* If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief or conviction, the evidence is factually insufficient. *Id.*

When no findings of fact or conclusions of law are filed following a bench trial, the trial court's judgment implies all findings necessary to support it. *See In re D.Z.*, 583 S.W.3d 284, 295 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996)); *see also In re Marriage of Price*, No. 10-14-00260-CV, 2015 WL 6119457, at *3 (Tex. App.—Waco Oct. 15, 2015, no pet.) (mem. op.). When

a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising both legal and factual sufficiency of the evidence issues. *In re G.B. II*, 357 S.W.3d 382, 385 n.1 (Tex. App.—Waco 2011, no pet.).

We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). The factfinder may choose to believe one witness and disbelieve another. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Although a factfinder is free to disbelieve testimony, "in the absence of competent evidence to the contrary, it is not authorized to find that the opposite of the testimony is true." *In re F.E.N.*, 542 S.W.3d 752, 764-65 (Tex. App.—Houston [14th Dist.] 2018), *pet. denied*, 579 S.W.3d 74 (Tex. 2019) (per curiam).

BEST INTEREST

As noted, Father challenges only the best interest finding. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); TEX. FAM. CODE ANN. § 153.131(b). However, "the rights of natural parents are not absolute," and the "rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)). "Prompt, permanent placement of the child in a safe environment is also presumed to be in the child's best interest." *In re L.N.C.*, 573 S.W.3d 309, 315 (Tex. App.—Houston

[14th Dist.] 2019, pet. denied); TEX. FAM. CODE ANN. § 263.307(a). The focus of the best interest analysis is what is best for the child, not what is best for the parent. *See In re C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied).

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). This list is not exhaustive, but simply indicative of factors that have been or could be pertinent. *Id.*; *C.H.*, 89 S.W.3d at 27.

The court does not require evidence on each factor in order to make a valid finding as to the child's best interest. *In re J.M.T.*, 519 S.W.3d 258, 268 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *A.L.H.*, 515 S.W.3d at 79. "[A] single factor may be adequate in a particular factual situation to support a finding that termination is in the best interest of the child." *J.M.T.*, 519 S.W.3d at 268. A parent's history, admissions, conduct relating to drug abuse, and inability to maintain a lifestyle free from arrests and incarcerations are relevant to the best-interest determination. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *See Smith v. Tex. Dep't of Protective*

*& Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.); *see also In re T.C.*, No. 10–10–00207–CV, 2010 WL 4983512, at *8 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.).

The factors weighing heaviest against Father are his present and future inability to meet the physical and emotional needs of K.B.D. and his present and future dangerousness to K.B.D. "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Jordan*, 325 S.W.3d at 729.

## DISCUSSION

As previously noted, Father has been incarcerated on one charge or another for over half of K.B.D.'s life. Father was incarcerated for two years beginning in 2018 after being convicted of evading arrest and aggravated assault with a deadly weapon. While the present case was pending, Father was jailed twice for parole violations for a total of approximately six months. Father was also jailed for sixty days in 2009 for making a terroristic threat and for 240 days in 2014 for assault family violence terroristic threat. Father testified that he had also previously been arrested for evading arrest with a vehicle. Father stated that he "takes responsibility" for his actions, but he denied that his own actions caused his legal problems. Father's criminal history reflects a history of assaultive behavior, although there was no evidence that he had ever harmed K.B.D.

Father failed to attend anger management classes that were mandated by the Department and by his parole officer. Father threatened Aunt in a telephone

conversation from jail. Father told her that he was going to take K.B.D. when he got out and that Aunt better have her "cop buddies ready."

Father admitted that he used methamphetamine in December before he was sent to an intermediate sanction facility ("ISF") after violating his parole. Father also admitted that he used methamphetamine and marijuana in March or April of 2020. Father refused numerous drug tests after being released from ISF, shaving his body hair so he could not be subjected to a hair strand test.

Father testified that while incarcerated in ISF, he had classes in parenting, anger management, and drug intervention, and he presented as an exhibit a certificate that he had completed a cognitive intervention treatment program. However, Father displayed poor impulse control during the final termination hearing. The trial judge repeatedly had to admonish Father for inappropriate behavior--laughing, nodding, and shaking his head during others' testimony, and talking out of turn.

While a parent's imprisonment is not by itself a ground for termination, a parent's imprisonment can negatively impact a child's emotional well-being. *In re J.F.-G.*, 612 S.W.3d 373, 388 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). Criminal activity, convictions, and incarcerations are among the types of actions or omissions that subject a child to a life of uncertainty and instability. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (parent's lengthy absence from child's life during early years due to incarceration creates emotional vacuum threatening child's emotional well-being); *see also In re J.G.S.*, 550 S.W.3d 698, 706 (Tex.

App.—El Paso, 2018, no pet.) ("A parent's incarceration is relevant to his ability to meet the child's present and future physical and emotional needs.").

A parent's illegal drug use is also the type of behavior that can negatively impact a child's emotional well-being. *D.M.*, 58 S.W.3d at 814. Substance abuse "can qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being." *In re K.H.*, No. 10-21-00073-CV, 2021 WL 4080261, at *4 (Tex. App.—Waco Sept. 8, 2021, pet. denied) (mem. op.). *See also In re M.R.R.*, No. 10-15-00303-CV, 2016 WL 192583, at *5 (Tex. App.—Waco Jan. 14, 2016, no pet.) (mem. op.) ("A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child."); *In re K.B.*, No. 05-17-00428-CV, 2017 WL 4081815, at *4 (Tex. App.—Dallas Sept. 15, 2017, no pet.) (mem. op.) ("continued use of illegal drugs in the face of the threat of a parent's loss of his parental rights is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers the child's well-being.").

A factfinder may reasonably infer from past conduct that endangers a child's well-being that similar conduct will recur if the child is returned. *In re W.S.*, No. 10-17-00318-CV, 2018 WL 1528460, at *4 (Tex. App.—Waco Mar. 28, 2018, no pet.) (mem. op.). *See Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."). The trial court could reasonably conclude that Father's criminal behavior and drug use would continue in the future.

We find that the evidence was legally and factually sufficient to support the trial court's finding that termination was in the best interest of K.B.D. We overrule Father's sole issue.

CONCLUSION

Having overruled the sole point on appeal, we affirm the judgment of the trial court.


MATT JOHNSON
Justice


Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith,
Affirmed
Opinion delivered and filed December 22, 2021
[CV06]

